HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENRY A. UMOUYO and ANIEDI H. UMOUYO,

    Plaintiffs,

v.

BANK OF AMERICA, N.A.,

    Defendant.

Case No. 2:16-CV-01576-RAJ

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

On September 9, 2016, Plaintiff Henry Umouyo filed this action in King County Superior Court, seeking to quiet title to the Property against Defendant Bank of America, N.A.'s ("BANA") and others. Dkt. # 1-1. This action was then removed. Dkt. # 1. On April 16, 2018, BANA filed its Answer and Cross-Complaint, which contained a cross-claim for judicial foreclosure of the Property. Dkt. # 44 at 10. Plaintiff Henry Umouyo moved to dismiss BANA's Cross-Complaint. Dkt. # 49. While this Motion to Dismiss was pending, Plaintiff Henry Umouyo moved for and was granted leave to file an amended complaint adding Aniedi Umouyo as a Plaintiff, which was filed on September 7, 2018. Dkt. ## 53, 56, 57. On September 28, 2018, BANA filed its Answer to Plaintiffs' Amended Complaint. Dkt. # 58. On January 23, 2019, this Court denied Plaintiff Henry Umouyo's Motion to Dismiss. Dkt. # 66. Plaintiffs also filed a Motion for Summary Judgment, which was denied. Dkt. ## 59, 69.

ORDER – 1

By oral motion on March 27, 2019, BANA moved to voluntarily dismiss its judicial foreclosure cross-claim, which this Court granted as Plaintiffs had not yet filed a responsive pleading to this claim. Dkt. # 78. The sole issue remaining for trial was Plaintiffs' quiet title claim.

The Court heard this matter in a bench trial on April 1, 2019. Dkt. # 80. Plaintiff Henry Umouyo testified on behalf of Plainitffs, and Mark Madden from Carrington Mortgage Services LLC ("Carrington") testified on behalf of BANA. Dkt. ## 80, 81. No other witnesses were called. *Id*. Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following findings of fact and conclusions of law. For purposes of organization and clarity, the Court has included some subsidiary conclusions of law with its findings of fact, and vice versa. Moreover, as the Court previously informed the parties, the Court takes judicial notice of the records filed on the public docket in this matter. Dkt. ## 17, 66; Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

For the following reasons, the Court finds that Plaintiffs have failed to meet their burden to prevail on their quiet title claim.

## I. FINDINGS OF FACT

1) This case concerns Plaintiffs' claim to quiet title to the subject property at 11708 SE 238th St #12, Kent, WA 98031-3775 ("Property"). Trial Ex. 1.
2) On January 10, 2008, Plaintiff Henry Umouyo took out a mortgage loan for $329,824.00 from CTX Mortgage Company, LLC, payable in monthly installment payments of $1,872.71, to purchase the Property. Trial Exs. 2, 3.
3) Plaintiff's loan is secured by a Deed of Trust ("DOT") on the Property. Trial Ex. 2. Paragraph 9(d) of the Deed of Trust requires the Lender to comply with the HUD Secretary's regulations before any foreclosure can occur. *Id*. at ¶ 9(d) ("This Security Instrument does not authorize

ORDER – 2

|   |   | acceleration or foreclosure if not permitted by regulations of the Secretary."). |
|---|---|---|
| | 4) | The DOT was recorded on January 29, 2008, and in 2010 subsequently assigned to BAC Home Loans, Servicing LP, fka Countrywide Home Loans Servicing, LP ("BAC"). *Id*.; *see also* Dkt. # 17 at 3 (granting request for judicial notice of certain documents); King County Auditor Instrument # 20100602000169. Then, on October 24, 2011, the DOT was assigned to Bank of America, N.A. ("BANA"). *See* Dkt. # 17 at 3; King County Auditor Instrument # 20100602000169. |
| | 5) | In August 2009, Plaintiff stopped paying his mortgage loan. Trial Exs. 4, 5, 24. |
| | 6) | Plaintiffs have not made any payments on the loan since July 2009, and have continued to reside at the Property. Mr. Umouyo also has not set aside any money to pay the mortgage. |
| | 7) | On October 6, 2009, BANA sent Mr. Umouyo a "Notice of Intent to Accelerate," which informed him of a default of $7,564.32 in missed mortgage payments and late fees. Trial Ex. 4. The Notice warned Mr. Umouyo that "if the default is not cured on or before November 5, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full." *Id*. |
| | 8) | November 5, 2009 passed, and Plaintiffs did not make any payment. |
| | 9) | On June 2, 2010, Recontrust Company, N.A was appointed as successor trustee. Trial Ex. 26. |
| | 10) | In July 2010, a Notice of Trustee's Sale was recorded in King County, which set a trustee's sale of the Property for October 29, 2010. Trial Ex. 5; *see also* King County Auditor Instrument # 20100729000513. The Notice of Trustee's Sale noted that Plaintiffs may avoid the sale by paying the |

ORDER – 3

"Total Amount Due" in Paragraph III of that document. *Id*. at ¶ V. Paragraph III dictated that the "Total Amount Due" was $31,310.59, which represented the sum of (a) Plaintiffs' missed monthly payments; (b) late charges; (c) beneficiary advances; (d) suspense balance; (e) other fees; and (f) trustee's expenses. *Id*. at ¶ III. This amount demanded to avoid the sale did not reflect the then-outstanding amount of the debt, which was $323,422.52, as reflected in Paragraph IV of that document. *Id*. at ¶ IV.

11) The sale was postponed multiple times. On October 12, 2010, the sale was postponed to November 19, 2010. Trial Ex. 6. On November 2, 2010, the sale was postponed again to December 3, 2010. Trial Ex. 7. On November 30, 2010, the sale was postponed again to December 30, 2010. Trial Ex. 8. On December 1, 2010, the sale was again postponed to January 7, 2011. Trial Ex. 9. Finally, on December 28, 2010, the sale was again postponed to January 21, 2011. Trial Ex. 10. Each postponement notice was signed by the foreclosure officer for Recontrust. Trial Exs. 6-10.

12) On February 12, 2011, Plaintiff Henry Umouyo discussed the debt with Springboard Consumer Credit Counseling Service. Trial Ex. 24. Springboard advised Mr. Umouyo, who at that point was 21 months behind on his mortgage payments, to reduce his monthly budget and discuss loan modification options with BANA. *Id*.

13) On July 9, 2011 Plaintiff Henry Umouyo discussed loan modification options with BANA's Loan Modification Team, who then sent Mr. Umouyo a "Commitment to Modify Mortgage," which proposed altering the mortgage's terms to avoid foreclosure. Trial Ex. 112. The terms increased Plaintiffs' monthly payment to reflect past due amounts. *Id*. Plaintiff Henry Umouyo rejected this offer.

14) On September 23, 2011, the trustee's sale was discontinued by Recontrust.

ORDER – 4

| | | |
|---|---|---|
| 1 | | Trial Ex. 11. |
| 2 | 15) | Plaintiff applied several times for loan modification options, including one that resulted in a September 27, 2012 loan modification offer that he refused to accept. Trial Ex. 115. |
| 5 | 16) | Carrington began servicing the loan on behalf of BANA effective May 1, 2013. *See* Dkt. # 74 at 2-3 ("Admitted Fact" ¶ 2). |
| 7 | 17) | Plaintiff continued to apply for and receive modification reviews from Carrington when they became his loan servicer in May 2013. |
| 9 | 18) | Plaintiff Henry Umouyo applied for a Home Affordable Modification Program ("HAMP") through Carrington in 2013, but Carrington denied this request due to excessive forbearance. Trial Ex. 119. |
| 12 | 19) | On July 3, 2014, Defendant BANA filed its action for judicial foreclosure in King County Superior Court. *Bank of America, N.A. v. Umouyo, et al.*, No. 14-2-18637-1. Trial Ex. 12. |
| 15 | 20) | After a bench trial, King County Superior Court denied BANA's request for foreclosure and monetary relief "without prejudice" because it determined that BANA had not submitted evidence that the face-to-face meeting requirement of 24 C.F.R. § 203.604 had been met, and denied BANA's motion to reopen the case to allow it to submit this evidence. Trial Ex. 17. |
| 21 | 21) | BANA did not present evidence of any subsequent face-to-face meeting at trial on April 1, 2019. |

## II. CONCLUSIONS OF LAW

1) In Washington, "[a]n action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination." *Kobza v. Tripp*, 105

ORDER – 5

Wn. App. 90, 95, 18 P.3d 621, 624 (2001); RCW 7.28.010.

2)     Plaintiffs identify four statutory bases for their quiet title claim: RCW 7.28.300, RCW 7.28.010, RCW 7.28.120, and RCW 7.28.310. Dkt # 57 at ¶ 1. Of these four citations, only RCW 7.28.300 provides the Court with a workable framework by which to resolve the present dispute. Under RCW 7.28.300, "[t]he record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien." RCW 7.28.300. The other citations Plaintiffs provide generally speak to who may bring a quiet title claim, that superior title will prevail in a quiet title claim, and that Plaintiffs may also bring a quiet title claim to personal property. *See generally* RCW 7.28.010, RCW 7.28.120 and RCW 7.28.310.

**A. Plaintiffs Failed to Prove that a Foreclosure Claim by BANA Would Necessarily be Time-Barred**

3)     As mentioned above, BANA voluntarily dismissed its judicial foreclosure claim prior to trial, and this claim is not presently before the Court. The key inquiry in this case is thus whether a potential judicial foreclosure claim from BANA would be time-barred, thus affording Plaintiffs superior title by operation of RCW 7.28.300.

4)     Plaintiffs do not allege that they have paid off their outstanding debt and are the rightful owners of the Property. *Niborg v. CitiMortgage, Inc.*, No. C17-5155 BHS, 2017 WL 2119448, at *2 (W.D. Wash. May 16, 2017) (citing *Young v. Quality Loan Serv. Corp.*, C14-1713RSL, 2015 WL 12559901, at *1 (W.D. Wash. July 7, 2015) ); *Evans v. BAC Home Loans Servicing LP*, No. C10-0656 RSM, 2010 WL 5138394, at *3 (W.D. Wash.

ORDER – 6

Dec. 10, 2010) ("Plaintiffs cannot assert an action to quiet title against a purported lender without demonstrating they have satisfied their obligations under the Deed of Trust."). However, a "record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations." *Jarvis v. Fed. Nat'l Mortg. Ass'n*, No. C16-5194-RBL, 2017 WL 1438040, at *4 (W.D. Wash. Apr. 24, 2017), *aff'd*, 726 F. App'x 666 (9th Cir. 2018) (quoting RCW 7.28.300 (1998)).

5) Accordingly, Plaintiffs can quiet title by showing that a foreclosure claim would necessarily be time-barred by the appropriate statute of limitations.

6) The statute of limitations on the enforcement of a promissory note is six years. *Bingham v. Lechner*, 111 Wn. App. 118, 127, 45 P.3d 562, 566 (2002); RCW 4.16.040(1). For installment contracts like the one at issue here, "each installment triggers the limitations period for that missed payment." *Jarvis*, 2017 WL 1438040 at *2. "The last payment owed commences the final six-year period to enforce a deed of trust securing a loan. This situation occurs when the final payment becomes due, such as when the note matures or a lender unequivocally accelerates the note's maturation. *Id.* (citing *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 434, 382 P.3d 1, 6 (2016)).

7) Accordingly, the statute of limitations to foreclose would start from the date of the last missed installment payment for Plaintiffs' debt. Per the terms of the Note, Plaintiffs' monthly installment payments would run until February 2038 unless the debt was accelerated.

8) Plaintiffs claim that BANA accelerated the debt via its Notice of Intent to Accelerate in 2009. The Court disagrees. To trigger acceleration, a

ORDER – 7

creditor must clearly indicate, by "some affirmative action," that the option to accelerate has been exercised. *Weinberg v. Naher,* 51 Wash. 591, 594, 99 P. 736, 737 (1909); *see also Edmundson v. Bank of Am.*, 194 Wn. App. 920, 930, 378 P.3d 272, 277 (2016). The Notice of Intent to Accelerate stated that the Loan was in default, but that plaintiffs could cure the default by paying an amount of $4,670.02 on or before December 2, 2011. The Notice stated that *if* plaintiffs failed to do so, the Loan would be accelerated with the full amount remaining becoming due and payable. Trial Ex. 4.

9) BANA therefore, with this Notice, did not "take an affirmative action that indicated that the payments on the loan had been accelerated." *Erickson v. Am.'s Wholesale Lender*, No. 77742-4-I, 2018 WL 1792382, at *3 (Wn. Ct. App. Apr. 16, 2018), *review denied*, 191 Wn. 2d 1024 (2018). The Notice "neither declared the entire debt due nor refused to accept installment payments." *Id*. It simply "informed [plaintiffs] of a future contingent event." *Id*.

10) Plaintiffs' argument that the "mandatory" language in the Notice effectively accelerated the debt is no longer supported by Washington law. The language in the Notice, which stated that if Plaintiffs did not cure the debt by November 5, 2009, then "the mortgage payments will be accelerated," is nearly identical to the language in a notice of intent to accelerate in a recent Washington State Court of Appeals decision in *Merceri*. *Merceri v. Bank of New York Mellon*, 4 Wash. App. 2d 755, 760-61, 434 P.3d 84, 87 (2018), *review denied sub nom. Merceri v. Bank of New York Mellon*, 192 Wash. 2d 1008, 430 P.3d 244 (2018). In *Merceri*, the court found that despite this seemingly mandatory language in the notice, the loan was not ultimately automatically accelerated because the bank did not thereafter take an "affirmative action in a clear an unequivocal manner indicating that the

ORDER – 8

| | | |
|---|---|---|
| 1 | | payments on the loan had been accelerated," such as declaring the entire |
| 2 | | debt due or refusing to accept installment payments. *Merceri*, 4. Wash. |
| 3 | | App. 2d at 761-62. |
| 4 | 11) | Under *Merceri*, BANA's Notice, by itself, did not accelerate the debt. The |
| 5 | | Notice did not demand the full amount due; instead, it demanded the |
| 6 | | amount of missed payments from Plaintiffs in the amount of $7,564.32. |
| 7 | | Trial Ex. 4. An additional "affirmative action," such as declaring the entire |
| 8 | | debt due or refusing to accept installment payments, would be needed to |
| 9 | | accelerate the loan. This did not occur on November 5, 2009, as Plaintiffs |
| 10 | | contend. Therefore, the debt did not accelerate on this date. |
| 11 | 12) | Similarly, the Court finds that the Notice of Trustee's Sale did not |
| 12 | | accelerate the debt because it did not demand the full amount owed. Trial |
| 13 | | Ex. 5. The Notice of Trustee's Sale noted that Plaintiffs may avoid the sale |
| 14 | | by paying the "Total Amount Due" in Paragraph III of that document. *Id*. |
| 15 | | at ¶ V. As noted above, Paragraph III dictates that the "Total Amount Due" |
| 16 | | is $31,310.59, which represents the sum of (a) Plaintiffs' missed monthly |
| 17 | | payments; (b) late charges; (c) beneficiary advances; (d) suspense balance; |
| 18 | | (e) other fees; and (f) trustee's expenses. *Id*. at ¶ III. This amount |
| 19 | | demanded to avoid the sale did not reflect the then-outstanding amount of |
| 20 | | the debt, which was $323,422.52. *Id*. at ¶ IV. Without such a demand for |
| 21 | | the full amount due, the Court finds that the Notice of Trustee's Sale did |
| 22 | | not operate as a "clear and unequivocal" affirmative action indicating the |
| 23 | | debt was accelerated. |
| 24 | 13) | Finally, based on what was presented at trial, the initiation of the sale |
| 25 | | process also did not accelerate the debt. In Washington, "acceleration does |
| 26 | | not occur automatically by invoking the power of sale." *4518 S. 256th,* |
| 27 | | *LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 445, 382 P.3d 1, 11 |
| 28 | ORDER – 9 | |

|   |   |   |
|---|---|---|
| 1 |   | (2016). Plaintiffs provide the Court with no authority that initiation of a |
| 2 |   | trustee sale process accelerates a debt, and the Court finds none on its own |
| 3 |   | accord. |
| 4 | 14) | The Court is thus left with little evidence in the record indicating at what |
| 5 |   | point, if any, Plaintiffs' debt was accelerated. Plaintiffs have not presented |

14) The Court is thus left with little evidence in the record indicating at what point, if any, Plaintiffs' debt was accelerated. Plaintiffs have not presented evidence indicating that BANA ever demanded the full amount due or refused to accept installment payments. Instead, the record shows that BANA and Carrington were attempting to work with Plaintiffs to establish loss mitigation or a loan modification. *See, e.g.*, Trial Exs. 112, 115, 118, 119.

15) Ultimately, based on what was presented at trial, the record indicates that the debt was not accelerated for many years, if at all, after Plaintiffs defaulted on their loan. The Court thus finds that Plaintiffs have failed to prove that the Note was accelerated and, accordingly, have failed to show that a foreclosure action by BANA would necessarily be time-barred.[1]

16) The Court finds that Plaintiffs have failed to satisfy their burden of proof to quiet title under RCW 7.28.300.

**B. BANA's Violations of HUD Regulations Do Not Establish a Basis to Quiet Title Under Washington Law**

17) Plaintiff's second main argument to quiet title relies on BANA's alleged failures to abide by regulations from the Secretary of Housing and Urban Development ("HUD").

18) The Court finds that the Deed of Trust incorporated compliance with HUD

---

[1] In so ruling, the Court declines to address the parties' arguments regarding whether the limitations period was tolled by the foreclosure proceedings, as the parties have not established when, and if, the limitations period started to run. Without such a start date in place, determining whether the limitations period was tolled during a specific time period would be a fruitless exercise that would not change the outcome here.

ORDER – 10

regulations as a condition precedent to foreclosure. Paragraph 9(d) of the Deed of Trust requires the Lender to comply with the HUD Secretary's regulations before any foreclosure can occur. *See* Trial Ex. 2 at ¶ 9(d) ("This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.").

19) On the face of the Deed of Trust, therefore, noncompliance with the HUD regulations, as set forth in the C.F.R., may operate as a defense to judicial foreclosure proceedings. Indeed, it was for noncompliance with 24 C.F.R. § 203.606(c), one such HUD regulation, that the King County Superior Court denied BANA's first judicial foreclosure action, albeit without prejudice. Trial Ex. 17 at p. 5, ¶¶ 8-13.

20) The Court finds that BANA is likely still in violation of one or more HUD regulations. For instance, Plaintiff testified at trial that BANA has not held a face-to-face meeting. BANA failed to address this testimony, and failed to respond to the HUD regulations issue at all, much less produce any evidence at trial that it complied with these regulations.

21) Additionally, BANA failed to show at trial that it complied with the face-to-face meeting requirement of 24 C.F.R. § 203.606(c) before initiating its foreclosure cross-claim. BANA also did not respond to Plaintiffs' argument that it failed to comply with 24 C.F.R. § 203.355(c) in recommencing foreclosure proceedings within 90 days.

22) However, the Court is not convinced that these apparent violations establish Plaintiffs' superior title to the Property. Numerous courts, including this Court, have held that no private cause of action for violations of HUD regulations even when those regulations are incorporated into a deed of trust. *See e.g., Dietz v. Quality Loan Serv. Corp. of Washington*, No. C13-5948 RJB, 2014 WL 1245269, at *3 (W.D. Wash. Mar. 25, 2014) (citing

ORDER – 11

cases and noting that "[t]hese cases hold that the HUD regulations do not create an implied cause of action for damages, but may be used only defensively as an affirmative defense to a judicial foreclosure action instituted by the creditor."); *Christenson v. Citimortgage*, Inc., No. 12-CV-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (collecting cases). In other words, even when those regulations are expressly or impliedly incorporated into the applicable contract, they have been found not to be actionable.

23) While Plaintiffs provide authority that they may quiet title by showing any possible foreclosure action is barred by Washington's statute of limitations, Plaintiffs have failed to provide any authority showing that HUD violations could serve as the basis for quieting title under Washington law, and the Court is unaware of any such authority. Moreover, allowing HUD violations to serve as a basis for quieting title would erode the holding of the "majority of cases holding that '[t]he distinction between offense and defense is paramount for HUD violations.'" *Ulrich-Kurtzer v. Wells Fargo Bank, N.A.*, C15-283RAJ, 2016 WL 4275451, at *4 (W.D. Wash. Jan. 28, 2016) (citing *Urenia v. Pub. Storage*, No. CV 13-01934 DDP AJWX, 2013 WL 4536562, at *2 (C.D. Cal. Aug. 27, 2013)).

24) The Court finds that BANA's continuing violations of HUD regulations may provide a viable defense for Plaintiffs in a future foreclosure action, but they do not, by themselves, establish Plaintiffs' right to quiet title under Washington law. Judge O'Donnell explicitly warned Plaintiffs of this result in his July 2016 Order. *See* Trial Ex. 17, at p. 5 ¶ 13 ("The Court holds that Mr. [Umouyo] has presented an equitable defense to the foreclosure and has not established an independent cause of action."). This Court agrees.

ORDER – 12

**C.  Plaintiffs Fail to Provide an Alternative Basis to Quiet Title**

25) Because the Court finds that (1) BANA has, to date, failed to comply with HUD regulations such as 24 C.F.R. § 203.606(c); and (2) that prevailing on the HUD regulations issue does not entitle Plaintiffs to quiet title, Plaintiffs' remaining arguments quickly become unnecessary.

26) At trial, Plaintiff also argued that (1) collateral estoppel barred BANA from relitigating the face-to-face meeting issue; (2) BANA's failure to properly assert its judicial foreclosure claim under Rule 13 bars BANA from using it in future proceedings; and (3) BANA's equitable estoppel argument fails for lack of proof.  None of these arguments, even if valid, would establish Plaintiffs' success on their quiet title claim.

27) Regarding Plaintiffs' collateral estoppel argument, Washington courts use a four-part test to analyze whether a previous litigation should have a collateral estoppel effect on a subsequent litigation. *Hadley v. Maxwell*, 144 Wn.2d 306, 311, 27 P.3d 600, 602 (2001).  Collateral estoppel requires "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. *Hadley*, 122 Wn.2d at 311 (citing *Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 113 Wash. 2d 413, 418, 780 P.2d 1282 (1989)).

28) Plaintiffs' argument here fails on multiple prongs.  First, the issues are not identical.  The issue before the King County Superior Court in 2014 was whether BANA had complied with 24 C.F.R. § 203.606(c)'s face-to-face meeting requirement up to that point in time.  Trial Ex. 17.  The King County Superior Court did not decide whether BANA would be forever

ORDER – 13

barred from complying with this requirement, as Plaintiffs now allege, and its dismissal "without prejudice" supports this limited characterization. *Id.* at 5.

29) Moreover, the Court has not been presented with sufficient evidence to determine if the issue of BANA's compliance with HUD regulations was "fully and fairly litigated" in proceedings before the King County Superior Court. The smattering of filings Plaintiffs provide as evidence of the litigation focused on the procedural viability of allowing BANA to present evidence of the futility of a face-to-face meeting, not on whether a meeting was held or could ever be held. Trial Exs. 14-16. Finally, even if the Court accepted Plaintiffs' collateral estoppel argument that relitigation of the face-to-face meeting issue is forever barred, it would not change the outcome here, because as stated above, Plaintiffs have failed to show how violations of the HUD regulations can serve as an affirmative basis to quiet title under Washington law.

30) Next, Plaintiffs' arguments at trial that BANA's judicial foreclosure claim is "forever barred" by operation of Rule 13 are also suspect, and irrelevant to the failure of their quiet title claim in this lawsuit. Plaintiffs provide no Washington authority by which this Court could quiet title by virtue of a foreclosure claim being "barred" by operation of Rule 13(a) or 13(g). Because BANA's judicial foreclosure claim was dismissed and did not come before the Court at trial, the Court need not and will not rule on its merits or procedural viability here.

31) Finally, while the Court agrees with Plaintiffs' argument at trial that BANA did not establish that Plaintiffs are equitably estopped from challenging the validity of the foreclosure action, BANA also did not raise this defense at trial (despite including in its trial brief). Dkt. # 75. The Court will thus

ORDER – 14

decline to rule on this defense at this stage.

### III. CONCLUSION

For the reasons previously stated, the Court finds Plaintiffs have failed to satisfy their burden of proof to quiet title. The Court thus finds in favor of Defendant BANA on Plaintiffs' quiet title claim. The Clerk shall enter judgment for BANA.

Dated this 11th day of April, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER – 15